UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHANNING LAMONTE SCOTT,

    Plaintiff,

        v.                          CAUSE NO. 2:25-CV-114-GSL-JEM

THOMPSON,

    Defendant.

OPINION AND ORDER

Channing Lamonte Scott, a prisoner without a lawyer, is proceeding in this case "against Case Manager Thompson in his individual capacity for compensatory and punitive damages for denying him inmate jobs and placing him in a disciplinary idle dorm because he is a Black Muslim in violation of the Fourteenth Amendment Equal Protection Clause[.]" ECF 7 at 3. Case Manager Thompson filed a motion for summary judgment, arguing Scott did not exhaust his administrative remedies before filing this lawsuit. ECF 22. Scott filed a response, and Case Manager Thompson filed a reply. ECF 35, 37. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable

to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Nevertheless, "[f]ailure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). To exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id*. But inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not

respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Here, the parties agree on all relevant facts. An Offender Grievance Process was in place at Westville Correctional Facility ("WCF") which required Scott to complete three steps before filing this lawsuit: (1) a formal grievance; (2) a Level I appeal to the warden; and (3) a Level II appeal to the Department Grievance Manager. ECF 22-2 at 3. On February 7, 2025, Scott submitted Grievance 203754, complaining he was unjustly removed from his job in September and Case Manager Thompson was keeping him from getting a new job due to prejudices against his race and religion. ECF 22-4 at 2. For relief, Scott requested transfer to another facility for fear of retaliation and the backpay owed to him. *Id.* On February 18, 2025, the grievance office issued a response returning Grievance 203754 as "Unprocessed," stating: "Your grievance regarding unpaid wages is being returned to you. Please be advised that your grievance concerning unpaid wages has been forwarded to your UTM and fiscal for evaluation. Any response will come from them. This concludes this issue through the grievance process." *Id.* at 1. Scott filed a new grievance challenging this decision and explaining he believed Case Manager Thompson was discriminating against him based on his race, which the grievance office rejected as untimely. ECF 22-4 at 3-4.

Here, the undisputed facts show the grievance office made Scott's administrative remedies unavailable by improperly rejecting Grievance 203754. Specifically, Scott alleged in Grievance 203754 that Case Manager Thompson was discriminating against him based on his race and religion, which is a matter appropriate to the Offender

Grievance Process. *See* ECF 22-2 at 3 (listing "Actions of individual staff" as a matter appropriate to the Offender Grievance Process). While Scott's request for backpay in that grievance may have been inappropriate, the Offender Grievance Process provides that: "No grievance shall be rejected because an offender seeks an improper or unavailable remedy, except that a grievance shall be rejected if the offender seeks a remedy to a matter that is inappropriate to the offender grievance process." *Id.* at 7. Because Grievance 203754 sought a remedy for a matter that was appropriate to the Offender Grievance Process, Scott's request for an improper remedy was not a valid basis for rejecting the grievance. *See id.*

In his reply, Case Manager Thompson argues Scott still had an available remedy because he could have corrected and resubmitted Grievance 203754. It is true the Offender Grievance Process allows an inmate to revise and resubmit a rejected grievance within five business days. *See* ECF 22-2 at 10 ("It shall be the responsibility of the offender to make the necessary revisions to the grievance form and to return the revised form to the Offender Grievance Specialist within five (5) business days from the date that it is returned to the offender."). But here, it is not clear what revisions Scott was expected to make to the grievance. In the Grievance Response, the grievance office told Scott that "[y]our grievance regarding unpaid wages is being returned to you," advised him that "your grievance concerning unpaid wages has been forwarded to your UTM and fiscal for evaluation," clarified that "[a]ny response will come from them," and concluded that "[t]his concludes this issue through the grievance process." ECF 22-4 at 1. This response did not adequately explain to Scott what revisions he was

expected to make to Grievance 203754, but rather asserted that a further response would come from his Unit Team Manager which "concludes this issue through the grievance process." *See id.* Based on this response, Scott could not have known that he was expected to remove his request for backpay and resubmit the grievance.

Case Manager Thompson also argues the grievance office could have properly rejected Grievance 203754 as untimely, as Scott filed the grievance in February 2025 and it complained of a decision made by Case Manager Thompson in September 2024. ECF 38 at 2. But the grievance office did not reject Grievance 203754 as untimely; rather, it improperly rejected the grievance because it requested backpay as a remedy. *See* ECF 22-4 at 1. Case Manager Thompson cannot now claim the grievance should have been rejected as untimely. *See Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) ("When a state treats a filing as timely . . . the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action.").

Accordingly, the undisputed facts show the grievance office made Scott's administrative remedies unavailable by improperly rejecting Grievance 203754 without any valid basis. *See Dole*, 438 F.3d at 809 ("a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance"). Therefore, Case Manager Thompson has not met his burden to show Scott had administrative remedies available to him which he did not exhaust before filing this lawsuit. Case Manager Thompson's motion for summary judgment will be denied.

For these reasons, the court DENIES Case Manager Thompson's motion for summary judgment (ECF 22).

SO ORDERED on April 21, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT

6